# 95 DTA 14

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE PONCE Y AIBONITO

EL PUEBLO DE PUERTO RICO
Recurrido

v.

JUAN CARLOS JIMENEZ CRUZ
Imputado-Peticionario

Núm. KLCE-95-00012

San Juan, Puerto Rico, a 27 de febrero de 1995

Panel integrado por su Presidente, Juez Brau Ramírez,
y los Jueces Amadeo Murga y Rodríguez Maldonado

Rodríguez Maldonado, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Visto lo resuelto en *Pueblo v. Cruz Bayona,* 124 D.P.R. 568 (1989) y que la Vista Preliminar está señalada para el 3 de marzo de 1994, se deniega la expedición del auto de *Certiorari.* Lo pronunció el Tribunal y lo certifica la Secretaria General. El Juez Amadeo Murga disiente, mediante voto separado.

María de la C. González Cruz
Secretaria General

## VOTO DISIDENTE DEL JUEZ DE
## APELACIONES SR. AMADEO MURGA — 95 DTA 14

La aplicación mecánica y superficial de las normas de derecho positivo hacen más fácil y requieren menos esfuerzo y dedicación de parte de aquellos quienes las administran pero por otro lado desmerecen la calidad de la justicia que recibe el pueblo. Disentimos por tanto de la opinión mayoritaria de denegar la expedición del auto de *certiorari* y aunque apresuradamente ■ fundamentamos el disenso.

Al imputado-peticionario Juan Carlos Jiménez Cruz se le formularon dos denuncias. La primera imputaba lo siguiente:

*"...[que] allá para la fecha del mes de diciembre de 1986, en Ponce,... ilegal, voluntaria, maliciosa y fraudulentamente, sustrajo a John Doe, identificado como John Doe, Jeannette López, menor de edad, con el propósito de ocultarlo de su madre Jeannette López, quien para la fecha era menor de 17 años de edad, consistente en que luego de realizar en la perjudicada Jeannette López una operación cesárea e inducir mediante engaño a ésta para que entregara a su hijo a terceras personas con el compromiso de regresarlo a su madre, le manifestó a ésta que el menor había fallecido, constándole al referido acusado la falsedad de la alegada muerte, separando de este modo a la madre del menor recién nacido..."*

La segunda denuncia imputaba los mismos hechos con excepción de que se nombró a la menor envuelta como *"Baby Girl Jeannette López".*

Las denuncias fueron presentadas a un juez municipal el día 22 de noviembre de 1994 y ante éste comparecieron los testigos de cargo, el ministerio público y el imputado asistido de su abogado. El Juez, luego de examinar a la testigo querellante Jeannette López, madre de los niños alegadamente robados, determinó que no había causa probable para el arresto por los delitos imputados.

El ministerio público no estuvo conforme con tal determinación por lo que sometió nuevamente las denuncias ante el Juez de Distrito, Hon. José Ruiz Rivera, según las disposiciones del inciso C de la Regla 6 de Procedimiento Criminal de 1963.■ Este señaló una vista para el 15 de diciembre y citó al imputado a la misma. El imputado compareció a la vista asistido por abogado. Esta vez el ministerio público presentó, además de a la madre querellante Jeannette López, al padre de ésta y al agente investigador. El juez determinó causa probable para el arresto y fijó una fianza de $1,000 al acusado para poder permanecer en libertad provisional. Se señaló el 3 de marzo de 1995 como fecha para la vista preliminar que dispone la Regla 23 del antes citado cuerpo de Reglas.

El 30 de diciembre de 1994 el imputado presentó ante el Tribunal Superior, Sala de Ponce, una moción bajo la Regla 64(p) de Procedimiento Criminal en la cual se alegó que no se había determinado causa probable con arreglo a la ley y a derecho porque el Juez de Distrito se negó a recibir prueba de defensa que, según sostenía y sostiene, era exculpatoria. El Juez

fundamentó su decisión a base de que ya había recibido prueba suficiente para determinar causa probable. Rechazó la oferta de prueba hecha por la defensa de presentar un testigo y prueba documental que, según la alegación de la defensa, desmentía la médula del testimonio de la querellante.

Para comprender el alcance de la determinación procesal hecha por el juez de distrito es preciso referirnos a la situación de hechos dentro de la cual se hizo la determinación.

En la vista para determinar causa probable para el arresto, la querellante Jeannette López Cruz declaró que en el año 1986 tenía 17 años de edad y quedó encinta. Con la ayuda del médico imputado pudo esconder a sus padres su estado de preñez y finalmente dio a luz gemelos en diciembre de ese año. En 21 de diciembre del mismo año, cuando el personal del hospital le entregó los niños, procedió a entregárselos al Sr. Víctor Gutiérrez Báez y a su esposa por unos días, en lo que resolvía los problemas en casa de sus padres. Declaró además que posteriormente el imputado le dijo que ambos niños habían muerto; que pasaron varios años y ella se enteró de que uno de los niños (el varón) vivía, que la niña había muerto y que fue entonces cuando fue a la policía a reclamarlos. La policía logró localizar al niño en casa del Sr. Gutiérrez Báez y pudo comprobar que la niña había fallecido años antes.

Como consecuencia de lo anterior se formularon las denuncias contra el imputado a base de que éste había inducido a Jeannette López a entregar los niños con el compromiso de regresarlos a su madre y que luego la había engañado al haberle comunicado que habían muerto.

El imputado quiso presentar el testimonio del Sr. Gutiérrez Báez, quien recibió los niños y los mantuvo bajo su custodia y la de su esposa ▮ Según la oferta de prueba de la defensa el Sr. Gutiérrez declararía que Jeannette los conoció mientras estaba en estado grávido y les ofreció el niño porque no lo quería; que en diciembre de 1986 aceptó y recibió a ambos niños de manos de Jeannette (se supo que el embarazo era múltiple luego de que Jeannette le ofreciera el niño) para quedarse con ellos porque Jeannette no los quería y él y su esposa no habían podido tener hijos y que luego él y su esposa los inscribieron como suyos y cuidaron de ellos. La niña murió posteriormente de una condición congénita y el niño permaneció bajo la custodia de éstos.

El imputado ofreció además presentar prueba de que estuvo haciendo su entrenamiento como ginecólogo obstetra en el Hospital de Distrito de Ponce desde 1984 hasta el 30 de junio de 1988.

Como puede verse del testimonio del Sr. Gutiérrez Báez y de la prueba documental que propuso ofrecer el imputado, vistos de la forma más favorable a la defensa, era de tal naturaleza que podía llevar el ánimo del juzgador al convencimiento de que la versión que ofreció la testigo era increíble o inverosímil y por ello insuficiente para determinar causa probable, tal como concluyó el juez ante el cual se habían sometido las denuncias anteriormente aun sin éste tener el beneficio del testimonio de la prueba de defensa. Nos resulta verdaderamente increíble que una madre que entrega a sus niños recién nacidos a personas que apenas conoce creyendo que es tan solo por unos día▮ en lo que resuelve el problema que tiene en su hogar y que luego se le informa que ambos han muerto, no haga ninguna diligencia con la persona a quien se los entregó y se olvide totalmente del asunto durante el transcurso de varios años. Contrario al testimonio de la joven que había escondido su estado de embarazo, el testimonio de Gutiérrez Báez demostraba convincentemente que la joven quería deshacerse de sus hijos y los entregó a una pareja que no tenía hijos y los quería.

El Tribunal Superior declaró sin lugar la moción bajo la Regla 64(p) y resolvió que la credibilidad de testigos no se podía discutir a nivel de determinación de causa probable para

arrestar. Concluyó que la credibilidad de los testigos *"es algo que se verá en el juicio en sus méritos."*

# I

La existencia de causa probable es un requisito esencial para la constitucionalidad de los arrestos. La determinación de causa probable opera sin embargo en un universo de diferentes circunstancias y los requisitos para determinarla deben adaptarse para hacerlos más adecuados a las distintas situaciones a las que deban aplicarse. El concepto no puede ser uno rígido pues hay que establecer un balance entre la libertad de los ciudadanos y la necesidad de aprehender a los infractores de ley sin obstáculos innecesarios.

En el contexto de la vista ante un magistrado de superior jerarquía según lo dispone la Regla 6C de Procedimiento Criminal, *supra,* la determinación de causa probable no puede ser una determinación *pro-forma* en la que únicamente se tomen en consideración las alegaciones de la parte querellante independiente de lo falso, inverosímil o increíble o descabellada de su versión. La determinación de causa probable es una determinación judicial hecha por un magistrado imparcial en el cual éste ejercita su juicio ponderado ante la prueba que se le presenta. Aunque el *quántum* de prueba que éste necesita recibir para ordenar que se someta al imputado a juicio no es el mismo necesario para obtener su convicción, se requiere, no obstante un mínimo de prueba. Si cualquier prueba inculpatoria que se presente, no importa su carácter falso o increíble, está inmune de ser desmentida con prueba contraria, por fuerte o contundente que ésta sea, la determinación de causa probable pierde su efecto protector para el ciudadano imputado. Este queda entonces sujeto a la posibilidad de ser encarcelado y sometido a un juicio con todo el dolor, gasto y daño que todo esto le representa.

La vista para la determinación de causa probable es una protección para el ciudadano contra la posibilidad de verse sometido a un juicio injustamente.█En la vista para determinar causa probable ante un magistrado no debe descartarse la posibilidad de que la prueba de cargo sea falsa y resulte increíble a la luz de otra prueba presente y disponible. Si aquélla no es suficiente para sostener una determinación de causa probable, la presentación de prueba que acredite esa falsedad es necesaria para la determinación. No puede privarse al imputado de esta oportunidad sin desvirtuar el propósito de la vista para determinar causa probable. Ello no significa convertir la vista para determinación de causa probable en un mini juicio ni extenderla más allá del ambito de su propósito. El juez tiene considerable discreción para establecer límites a la vista para mantenerla dentro del ámbito que señala la ley. Sin embargo, lo que no debe ser aceptable es privar a un ciudadano de presentar información que pueda llevar el ánimo del juzgador a apreciar que las alegaciones en su contra son falsas, increíbles o insuficientes para determinar causa probable en aras de apresurar el proceso y de facilitar la determinación. El juez tampoco debe privarse de esa posibilidad.

# II

La vista celebrada en el presente caso era una indistinguible de la vista preliminar autorizada en la Regla 23 de Procedimiento Civil. De hecho, así lo señala el Profesor Chiesa en su obra.█

*"...Cuando el denunciado o imputado es citado, la vista de determinación de causa probable para el arresto puede convertirse en una especie de "prevista preliminar", habida cuenta del derecho del imputado a estar asistido de abogado, a contrainterrogar testigos en su contra y a ofrecer prueba en su favor. De hecho, si el imputado comparece con abogado y ejerce su derecho estatutario a contrainterrogar los testigos en su contra y a ofrecer prueba de defensa, el procedimiento adviene uno casi indistinguible de la vista preliminar, con el efecto de --en caso de determinación de causa probable por delito grave-- una duplicación de vista preliminar. Lo grave es la falta de criterios o indicadores para la determinación de cuándo se somete el caso en ausencia del imputado y cuándo se le avisa a éste o se le invita a*

*comparecer.*

*Estimo que este tercer párrafo en la Regla 6(a) fue introducido por la Ley 29 del 19 de junio de 1987 como parte esencial del esquema para eliminar cuando, en la vista para la determinación de causa probable para el arresto, el imputado comparece con abogado y el magistrado examina a algún testigo con conocimiento personal de los hechos imputados. Eliminado tal esquema con la Ley 26 del 8 de diciembre de 1990, debió eliminarse también el tercer párrafo de la Regla 6(a), que concede al imputado el derecho a estar asistido de abogado, contrainterrogar testigos en su contra y presentar prueba en su favor."*

Si el estándar es el mismo, el criterio de lo que constituye causa probable debe estar sujeto a los mismos parámetros fijados por nuestro Tribunal Supremo. Aplica lo resuelto por nuestro Tribunal Supremo en la sentencia del caso *Pueblo v. Rodríguez Aponte.* ■

*"---resolvemos que en casos apropiados los magistrados en la vista preliminar están facultados para atender cualquier reclamo genuino de un imputado, basado en que determinado testigo de cargo puede aportar evidencia que excluiría la determinación de causa probable. Ello es función inherentemente judicial."*

En las jurisdicciones estatales y en la federal, donde existe una regla igual o similar a nuestra Regla 6 que concede al imputado el derecho a contrainterrogar testigos y prestar prueba, se ha reconocido que para que la vista cumpla su propósito el imputado debe tener el derecho en esa etapa de ofrecer prueba que podría exculparle sin necesidad de continuar sujeto a un procedimiento criminal. En *Desper v. State,* ■ se sostuvo lo siguiente:

*"...We are of the opinion that the magistrate, under the circumstances of this case, should have permitted defense counsel to call Detective Lee as a witness at the preliminary examination, as a part of the defendant's attempt to challenge probable cause. If that testimony had been perceived by the State to have been irrelevant to the probable cause issue, the State could have sought to curtail that testimony. The magistrate could then have exercised his discretion to insure that the scope of Lee's testimony remained within permissible bounds."*

En *Hunter v. District Court, etc.,* ■ se abordó el tema de si en una vista preliminar se podía entrar a considerar la credibilidad de los testigos. Se discutió la ley de varios estados y se resolvió lo siguiente:

*"We hold that a judge in a preliminary hearing has jurisdiction to consider the credibility of witnessee only when, as a matter of law, the testimony is implausible or incredible. when there is a mere conflict in the testimony, a question of fact exists for the jury, and the judge must draw the inference favorable to the prosecution."*

También véase *United States v. King,* 482 F.2d 768 (1973) y los casos allí citados; Lafave and Israel, *supra,* sec. 14.1, C. Wright, *Federal Practice and Procedure,* Vol. I, Sec. 85; F.V. Palmer, *Prelimininary Examination and Due Process,* 15 Kansas Law Rev. 374 (1967).

La decisión en que se apoya la mayoría para denegar el auto, *Pueblo v. Cruz Bayona* ■ no es vinculante en el presente cuadro de hechos. Allí, en una decisión dividida, nuestro Tribunal Supremo sostuvo que el juez en una vista para determinar causa probable podía limitar el contrainterrogatorio de un testigo de cargo. El presente caso es distinguible. En el caso ante nos se negó totalmente al imputado la oportunidad de presentar un testigo que podía haber inclinado el ánimo del juez hacia una determinación de inexistencia de causa probable. El cuadro de hechos no indicaba que la solicitud del imputado fuera frívola ni hecha con la intención de alargar los procedimientos o con otro propósito que no fuera el de tratar de

desvirtuar la existencia de causa probable. Ciertamente el juez no debió cerrar las puertas a la presentación de esa prueba. Si tomamos en cuenta que podía limitar la presentación si consideraba que no tenía el efecto de destruir la existencia de causa probable, resultaba apropiado escuchar el testimonio ofrecido.

Según lo resuelto en *Pueblo v. Rodríguez Aponte*, supra, en una vista preliminar, el juzgador tiene considerable discreción para establecer límites a la extensión del testimonio y del contrainterrogatorio pero ello no significa que pueda desvirtuar totalmente el propósito de la vista al negarse a recibir el testimonio de testigos que pueda alterar significativamente el curso de la determinación de causa probable. Como se señaló en *Desper v. United States*, supra:

*"In so holding, we recognize that, at a preliminary examination, testimony relating to probable cause is often difficult, if not impossible, to distinguish from testimony elicited for discovery purposes. Witnesses should not be called at a preliminary examination solely for discovery purposes. Furthermore, the "examinatorial entitlements" of a criminal defendant at a preliminary examination, in challenging probable cause, do not necessarily justify the defendant in seeking to require an unlimited number of witnesses to testify. The discretion of the magistrate in this area is crucial. A preliminary examination should not fall victim to an endless wrangle relating to the existence of probable cause."*

Contrario a lo resuelto por la mayoría, nuestro Tribunal Supremo no ha decidido este punto en contra de la pretensión del imputado. La Regla 6 es clara; le da derecho a éste a presentar prueba a su favor. Cuando la prueba ofrecida, cuya presentación es denegada, es una que va a la médula de la existencia de causa probable, el juez comete un abuso de discreción que tiene el efecto de privar al imputado de una determinación judicial justa de la existencia o no de causa probable. Ello convierte la determinación en una mecánica y superficial privada de todo viso de determinación judicial y la convierte en una burocrática, más atenta a ahorrar tiempo que a hacer justicia y que despoja al individuo de la protección constitucional que ofrece el proceso de determinación de causa probable para el arresto.

El hecho de que se vaya a celebrar una vista preliminar a tenor con la Regla 23 no subsana la privación del derecho del imputado. Si el juez hubiese oído la prueba y determinado que no había causa probable, el imputado no tenía que someterse a la vista preliminar. *Coleman v. Burnett*, 477 F.2d 1187 (1973).

Expediríamos.

**Antonio J. Amadeo Murga**
**Juez de Apelaciones**

**ESCOLIOS VOTO DISIDENTE DEL JUEZ SR. AMADEO MURGA — 95 DTA 14**

**1.** El recurso se presentó el día 13 de febrero de 1995 y hay una vista señalada para el siguiente 3 de marzo.

**2.** 34 L.P.R.A. Ap. II.

**3.** En el caso de la niña, la tuvieron bajo su custodia hasta que ésta falleció y en el caso del niño, hasta la fecha de la denuncia.

**4.** Repele al sentido común que la joven entregara los niños a terceras personas para que *"se los cuidaran por unos días"* sin siquiera saber donde iban a vivir y obtener la dirección y teléfono para inquirir acerca de su bienestar y poder visitarlos. Nos atrevemos a parafrasear la célebre frase del Ex-Juez de Nuestro Tribunal Supremo, Raúl Serrano Geyls al afirmar que los jueces no somos tan sananos como para estar ajenos a lo que

pasa en la calle.

**5.** La Fave and Israel, *Criminal Procedure,* Vol. II Sec. 14.1, págs. 236, 237.

**6.** *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Vol. III, Sec. 21.3, pág. 26

**7.** 116 D.P.R. 653, 668-669 (1985).

**8.** 318 SB 2d. 437 (W. Va. 1984).

**9.** 543 P2d. 1265 (CA 1975).

**10.** 124 D.P.R. 568 (1989).