# 95 DTA 193

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL V - PONCE Y AIBONITO**

EL PUEBLO DE PUERTO RICO
Recurrido

v.

JUAN CARLOS JIMENEZ CRUZ
Imputado-Peticionario

Núm. KLCE-95-00012

San Juan, Puerto Rico, a 26 de junio de 1995

Panel integrado por su presidente, Juez Brau Ramírez
y los Jueces Amadeo Murga y Rodríguez Maldonado

Amadeo Murga, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 27 de febrero de 1995 [véase **95 DTA 14, pág. 46**] una mayoría de este tribunal denegó la expedición del recurso de *certiorari* presentado por el imputado-peticionario. ■ Este solicitó oportunamente la reconsideración. Estudiada la misma, el 29 de marzo de 1995 expedimos una orden a la parte recurrida para que mostrara causa por la cual no debíamos revocar la resolución recurrida.

El 3 de mayo paralizamos los procedimientos ante el Tribunal de Primera Instancia y dimos por sometido el recurso. La parte recurrida presentó su escrito luego de expirado el término concedido por este Tribunal. No obstante consideramos los fundamentos en él expuestos. Procedemos pues a resolver el recurso.

Reexaminada la cuestión planteada a la luz de la Moción de Reconsideración variamos nuestra determinación inicial y resolvemos, según intimado en la orden del 29 de marzo, revocar la resolución recurrida en la medida en que no se le permitió al imputado Juan Carlos Jiménez Cruz presentar prueba de defensa que hubiese podido llevar al juez instructor a concluir que la prueba de la testigo de cargo resultaba increíble. Ello, a su vez, hubiese tenido el efecto de hacer que la prueba de cargo fuese insuficiente para determinar causa probable para el arresto conforme con las exigencias de nuestro ordenamiento. En consecuencia, devolvemos el caso para que se celebre la vista de causa probable para el arresto de acuerdo con las normas que en adelante señalamos.

### I

Exponemos a continuación los hechos pertinentes a la adjudicación de la controversia presentada.

Al imputado-peticionario Juan Carlos Jiménez Cruz se le formularon dos denuncias. La primera imputaba lo siguiente:

*"...[que] allá para la fecha del mes de diciembre de 1986, en Ponce,... ilegal, voluntaria, maliciosa y fraudulentamente, substrajo a John Doe, identificado como John Doe, Jeannette López, menor de edad, con el propósito de ocultarlo de su madre Jeannette López, quien para la fecha era menor de 17 años de edad, consistente en que luego de realizar en la perjudicada Jeannette López una operación cesárea e inducir mediante engaño a ésta para que entregara a su hijo a terceras personas con el compromiso de regresarlo a su madre, le manifestó a ésta que el menor había fallecido, constándole al referido acusado la falsedad de la alegada muerte, separando de este modo a la madre del menor recién nacido...".*

La segunda denuncia imputaba los mismos hechos en relación con una niña a quien se nombró como *"Baby Girl Jeannette López"*.

Las denuncias fueron presentadas ante un juez municipal. Ante éste comparecieron los testigos de cargo, el ministerio público y el imputado asistido de su abogado. El Juez, luego de escuchar el testimonio de la querellante Jeannette López, madre de los niños alegadamente robados, determinó que no había causa probable para el arresto por la comisión de los delitos imputados.

El ministerio público no estuvo conforme con tal determinación por lo que sometió nuevamente las denuncias ante un Juez de Distrito, según lo autorizan las disposiciones de la Regla 6, inciso (c) de Procedimiento Criminal de 1963 ■ Se señaló una vista para el 15 de diciembre de 1994 y se citó al imputado a la misma. Este compareció a la vista asistido por abogado. Esta vez el ministerio público presentó además del testimonio de la querellante, el del padre de ésta y el del agente investigador. El Juez, no empece la solicitud del imputado,

impidió que éste presentara prueba de defensa. Determinó causa probable para el arresto del imputado a base de la prueba del ministerio público y fijó una fianza de $1,000 al acusado para poder permanecer en libertad provisional. Señaló el 3 de marzo de 1995 como fecha para la Vista Preliminar que dispone la Regla 23 del antes citado cuerpo de Reglas.

Días más tarde el imputado presentó ante el Tribunal Superior, Sala de Ponce, una moción bajo la Regla 64(p) de Procedimiento Criminal, *supra*, en la cual alegó que no se había determinado causa probable con arreglo a la ley y a derecho porque el Juez de Distrito se negó a recibir prueba de defensa que era exculpatoria. En su moción adujo que lo ocurrido en la vista para determinar causa probable para el arresto fue, en síntesis, lo siguiente: La querellante Jeannette López Cruz declaró que en el año 1986 quedó embarazada a los 17 años de edad; que con la ayuda del médico imputado pudo esconder a sus padres su estado de gravidez; que finalmente dio a luz gemelos en diciembre de ese mismo año y que el 21 de diciembre, cuando el personal del hospital le entregó los niños, procedió a entregarlos al Sr. Víctor Gutiérrez Báez y a su esposa para que los cuidaran por unos días, en lo que resolvía los problemas en casa de sus padres. Declaró además que posteriormente el imputado le dijo que ambos niños habían muerto. Pasaron varios años y ella se enteró de que uno de los niños (el varón) vivía, que la niña había muerto y que fue entonces cuando acudió a la policía a reclamarlos. La policía logró localizar al niño en casa del Sr. Gutiérrez Báez y pudo comprobar que la niña había fallecido años antes. Luego de presentado ese testimonio, el fiscal presentó el testimonio del padre de Jeannette López. Este, entre otras cosas, declaró que desde 1986 a 1993 su hija Jeannette nunca le mencionó nada acerca de su alumbramiento y que él finalmente se enteró por su otra hija quien le dijo que tenía dos nietos más, hijos de Jeannette. Según ella, obtuvo la información directamente de la misma Jeannette. El tercer testigo de la fiscalía fue el policía José L. Pacheco Román, quien recibió en primer lugar la querella presentada por Jeannette y su padre, investigó el asunto y finalmente encontró el varón en poder del Sr. Víctor M. Gutiérrez Báez y su esposa en Trujillo Alto, Puerto Rico. Fue él quien también verificó que la niña había muerto.

Presentada la prueba de cargo, la defensa informó que interesaba presentar prueba de defensa. El Juez de Distrito decidió no recibirla a base de que la prueba ante él presentada era suficiente para determinar causa probable. La defensa reiteró su pedido e hizo una oferta de prueba que, según alegó, resultaba exculpatoria pues desmentía la médula del testimonio ofrecido por la testigo de cargo. Entre la prueba ofrecida estaba el testimonio del Sr. Víctor M. Gutiérrez Báez, quien alegadamente recibió los niños de manos de Jeannette López el 21 de diciembre de 1986. Este, según la oferta de la defensa, declararía que conoció a Jeannette cuando ya estaba embarazada, que ésta dijo no querer al niño y estar dispuesta a dárselo. Luego, en diciembre de 1986, se enteró que Jeannette había dado a luz no uno, sino dos niños pero que accedió a recibirlos, como en efecto hizo de manos de ésta. Cuando recibió los niños le dijo a Jeannette que si tenía dudas de lo que estaba haciendo que se quedara con los bebés pero que ella manifestó que no, que deseaba que él los recibiera. Declararía además que cuando Jeannette López entregó los niños sabía que el Sr. Gutiérrez y su señora esposa los inscribirían como suyos y que nunca los vería. Además de esa prueba el imputado se proponía presentar copia del diploma que acreditaba que estuvo realizando su entrenamiento como ginecólogo-obstetra en el Hospital de Distrito de Ponce desde el 7 de julio de 1984 al 6 junio de 1988. El Juez Instructor se mantuvo firme en su determinación inicial y denegó la petición de la defensa.

Ante esos hechos el Tribunal Superior declaró sin lugar la moción del imputado bajo la Regla 64(p) de manera que se sostuvo la determinación del Juez de Distrito. Adujo como fundamento que la credibilidad de los testigos no se podía dirimir en la etapa de determinación de causa probable para arrestar. Concluyó que la credibilidad de los testigos *"es algo que se verá en el juicio en sus méritos"*. El imputado recurrió ante este foro.

## II

El procedimiento para la determinación de causa probable para el arresto está dispuesto en la Regla 6 de Procedimiento Criminal, *supra*. Para que esta determinación cumpla con la protección garantizada por la Enmienda Cuarta de la Constitución de los Estados Unidos y la sección 10 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, debe tomarse a base de un mínimo de prueba que vincule al ciudadano sospechoso con el delito. Tal es la garantía constitucional contra arrestos arbitrarios y caprichosos y la protección al ciudadano de que no va a ser sometido a juicio arbitraria y frívolamente. Es por ello que la Regla 6, en cumplimiento del estándar constitucional mínimo exige que la determinación de causa probable se tome a base de una denuncia jurada, de un examen de declaraciones juradas sometidas con la denuncia o de un examen bajo juramento del denunciante o testigo.■ Si bien la determinación de causa probable para el arresto no requiere que el imputado sea siempre notificado de su derecho a estar presente, en los casos en que éste comparece a la determinación de causa probable para arresto, la Regla 6(a), *supra*, expresamente le confiere el derecho a estar asistido por abogado, a contrainterrogar a los testigos en su contra y ofrecer prueba en su favor. El propósito de esta disposición no puede ser otro que dar al imputado un mecanismo que le proteja de la posibilidad de verse obligado a ser sometido a un proceso a base de una acusación infundada y frívola. En este sentido, cuando un imputado como en el caso ante nos, comparece a una vista para determinar causa probable para el arresto, el propósito de la misma es indistinguible de aquel que anima la vista preliminar dispuesta en la Regla 234. Según las expresiones de nuestro Tribunal Supremo en *Pueblo v. Rodríguez Aponte,*■ esta vista tiene entre otros propósitos:

*"... proteger a la persona imputada a través de un filtro o cedazo judicial por el cual el Estado tiene que pasar prueba, y demostrar si está justificado o no a intervenir con la libertad de un ciudadano y someterlo a los rigores y contingencias de un juicio plenario."*

Visto este propósito y a tenor con la disposición expresa de la Regla 6 (a) que concede al imputado el derecho a contrainterrogar testigos y a presentar prueba de defensa, resulta forzoso concluir que, en una determinación de causa probable para el arresto, privar a un imputado de presentar prueba que pueda tener el efecto de desmerecer la prueba que pueda llevar a una determinación de causa probable para el arresto puede constituir una violación a su derecho a que se determine causa probable por un magistrado conforme con la ley y el derecho según lo dispone la Regla 64 (p) de Procedimiento Criminal, *supra*. La posición asumida por el juez recurrido de que en una vista para determinar causa probable para el arresto está excluida toda consideración acerca de la credibilidad del testimonio de los testigos, está indefectiblemente reñida con la disposición expresa de la Regla 6(a) de Procedimiento Criminal en la medida en que concede al imputado el derecho a contrainterrogar y a presentar prueba de defensa. Ningún propósito serviría entonces el derecho a realizar el contrainterrogatorio y a presentar prueba de defensa si el juez instructor no puede entrar a considerar la credibilidad de los testigos dentro del limitado ámbito que abarca la determinación de causa probable. *Pueblo v. Rivera Rodríguez, supra;* La Fave & Israel, *Criminal Procedure,* sec. 14.4, pág. 670. West Publishing Co. (1992).

La norma más razonable es que la credibilidad de los testigos pueda considerarse en una vista para determinar causa probable para el arresto consistente con el propósito de la vista y limitada la consideración de la credibilidad de los testigos al ámbito de la vista de determinación de causa probable para arrestar. *Pueblo v. Rodríguez Aponte, supra.*■

¿Cuál es la limitación? En *Hunter v. District Court, etc.*■ se consideró la función de sopesar la credibilidad de los testigos en una vista preliminar y se resolvió lo siguiente:

*"We hold that a judge in a preliminary hearing has jurisdiction to consider the credibility of witnesses only when, as a matter of law, the testimony is implausible or incredible. When*

*there is a mere conflict in the testimony, a question of fact exists for the jury, and the judge must draw the inference favorable to the prosecution."*

El Profesor Chiesa opina que la norma que *Hunter* constituye es correcta y consistente con a la regla vigente en Puerto Rico:

*"Estimo que Hunter constituye una norma correcta en Puerto Rico: el magistrado, en vista preliminar, sólo puede considerar la credibilidad del testigo con base para determinar que no hay causa probable, cuando el testimonio es increíble o no plausible. El Tribunal Supremo se ha limitado a decir que por la naturaleza de la vista preliminar, la evaluación del magistrado sobre la credibilidad de los testigos, está supeditada al quántum de la prueba requerida en esta etapa procesal".* Chiesa, *Ibid,* pág. 93.

Véase asimismo *United States v. King,* 482 F.2d 768 (1973); Lafave & Israel, *Criminal Procedure,* Vol. II, sec. 14.1, págs. 236-237; C. Wright, *Federal Practice and Procedure,* Vol. I, sec. 85.

Apliquemos pues la norma expuesta a los hechos ante nosotros. El Juez de Instancia se negó a recibir la prueba ofrecida por la defensa consistente en el testimonio de Víctor Gutiérrez Báez, quien recibió los niños de manos de la testigo de cargo en 1986 y retuvo al varón que sobrevivió hasta 1993. Es menester recalcar que debemos considerar el testimonio del Sr. Gutiérrez desde el punto de vista más favorable a la defensa a base de la representación que ésta hiciera del contenido de tal testimonio. Visto pues desde el ángulo más favorable a la defensa, el testimonio de Gutiérrez Báez podía haber llevado al Juez a concluir que el relato de Jeannette López resultaba inverosímil y que no existía causa probable para el arresto del imputado.

La versión de la testigo de cargo de que se proponía entregar los niños temporeramente resulta de su faz poco creíble. No podemos perder de vista las circunstancias dentro de las cuales ocurrieron los hechos. Se trata de una jovencita, en aquel entonces, quien había ocultado su estado de embarazo a su padre y entregó los recién nacidos tres días después del alumbramiento a una persona que había conocido en San Juan. Además, resulta de su propio relato que dos semanas después de entregar los niños el imputado le informó que las criaturas habían fallecido, más sin embargo no hizo esfuerzos de comunicarse con las personas a quienes los había entregado para inquirir al respecto. No fue sino hasta casi ocho años más tarde que tomó las medidas para investigar acerca del paradero de sus hijos y sólo luego de que su hermana revelara a su padre el secreto que había ocultado durante tanto tiempo. Ante esa versión, increíble de su faz, el testimonio de la persona que recibió los niños, vista de la manera más favorable al imputado, pudo haber llevado al Juez de Instancia a creer que la entrega de éstos no fue temporera, como alegaba la testigo de cargo, sino que abonaba a una determinación de que resultaba improbable que los hechos ocurrieran según su testimonio. A la luz de las circunstancias indisputadas dentro de las cuales ocurrieron los hechos, éste resultaba increíble. Son inconsistentes entre sí la intención de recuperar las criaturas tras una entrega temporera y la omisión de hacer las diligencias pertinentes para cerciorarse que conocía el paradero de éstas. Desafía todo sentido de lógica el que a tres días del alumbramiento se entregue a unos recién nacidos *"temporeramente"* a unas personas a quienes meramente vio en una ocasión sin saber dónde van a vivir éstos, sin hacer procurar asegurarse de que puede visitarlos y verlos. Resulta increíble que una madre sea informada de que sus recién nacidos han muerto y no intente comunicarse con las personas a quienes los entregó para saber al menos la causa, fecha y circunstancias de su muerte y dónde están enterrados. A su vez increíble porque no es sino hasta más de siete años después que despierta su interés acerca del paradero de los niños y únicamente a raíz del descubrimiento de que su padre descubre del hecho de que es abuelo de otros dos niños.

Visto el contenido del testimonio ofrecido como prueba de la manera más favorable al imputado, el hecho de que los esposos Gutiérrez, quienes no habían podido tener hijos y que vivían en San Juan, fueran a recibir en Ponce dos niños gemelos recién nacidos de una adolescente que apenas conocían para trasladarlos a San Juan a cuidarlos *"sólo por unos días"* resulta inverosímil. Cualquiera que sea padre o madre conoce el grado de dificultad y sacrificio que conlleva la delicada función de cuidar un recién nacido, por partida doble cuando se trata de gemelos. Es ilógico suponer que los esposos Gutiérrez, quienes no tenían una guardería infantil para madres solteras y ni habían podido tener hijos biológicos, fueran a recibir dos recién nacidos de prácticamente una desconocida si no era con el propósito de criarlos como suyos.

No estamos resolviendo que el Juez Instructor necesariamente tenía que concluir que la prueba de cargo era increíble. Sólo entendemos que en el desempeño de su función, negarse de antemano a escuchar la prueba de la defensa resulta irrazonable en la medida en que el único elemento de juicio para la toma de decisión es una versión parcial de los hechos.

Resolvemos que en una vista para determinar causa probable para el arresto, cuando de la prueba de cargo o de la de defensa surgen circunstancias que pueden llevar a un juzgador razonable a concluir que la versión de la parte querellante, examinada a la luz de la totalidad de la prueba, puede resultar inverosímil, el Juez Instructor tiene la obligación de sopesar la credibilidad de los testimonios presentados y adjudicar credibilidad para esos propósitos. Es inconsistente con el desempeño de esa obligación negarse a recibir prueba de defensa que, de ser oída y contrastada con la prueba de cargo desmerece la suficiencia de esta última para determinar causa probable.

Nuestra decisión no implica ni conlleva el efecto de convertir la vista para determinación causa para el arresto en un *"mini juicio"* que obligue al juez a entrar en el campo de la credibilidad de los testigos en términos generales y en toda situación de hechos que se presente ante él. Tampoco significa que el juez no goce de amplia discreción para delimitar el alcance de la presentación de prueba de defensa cuando considere que la misma es acumulativa o cuando ésta no surte ningún efecto en la suficiencia de la prueba de cargo para determinar causa probable. De la misma manera reconocemos que el juez tiene gran discreción para limitar el alcance del contrainterrogatorio en atención a los propósitos de la vista.█ Es sólo cuando se presenta una situación en que la versión del testigo de cargo pueda resultar increíble, sea a base del propio contenido de su testimonio o el suyo unido al de otros testigos, que pueden ser los de la defensa, que el juez debe sopesar la credibilidad de los testigos con el propósito de evitar que un acusado sea procesado a base de una acusación frívola. Aunque la línea divisoria entre el mero conflicto de testimonios y lo que constituye una versión increíble no sea en todo caso siempre clara, no deja de existir. El juez no debe de abstenerse de realizar la función de sopesar la credibilidad para estos limitados propósitos a base de una aseveración general de que en una vista de causa probable para el arresto no procede entrar en aspectos de credibilidad de los testigos. Si bien ello resulta más fácil en el desempeño de su obligación, para el imputado implica consecuencias mucho más onerosas.

Los jueces cuentan con su experiencia como personas y como jueces para poder calibrar cuándo se trata de un caso de mero conflicto entre versiones ofrecidas y cuándo tienen ante sí una cuestión de representación increíble de los hechos según presentados por la versión de la parte querellante. Esa es una de las funciones más frecuentes, tanto a nivel de instancia como a nivel apelativo y los jueces no deben abdicar el desempeño de esta función. Véase *Pueblo v. Rivera Beltrán,* 67 D.P.R. 194 (1947), (es increíble que sin haberse demostrado que un acusado estuviera loco o borracho éste atacara con una cuchilla a tres personas sin que nada hubiese ocurrido entre ellos); *Pueblo v. Arroyo,* 83 D.P.R. 573 (1961), (increíble una declaración jurada en la que consta que un agente ve a un imputado tener en las manos y contar en un balcón que da a la vía pública boletos de bolipool cuando dicho agente había

hecho declaraciones similares en ocasiones anteriores); *Pueblo v. Berdecía Rodríguez,* 96 D.P.R. 65 (1968), (increíble que un padre haya cometido incesto con una hija adolescente estando otra persona en la cama y otros familiares cerca en el mismo cuarto sin que nadie se diera cuenta a pesar de que gritó y lloró); *Pueblo v. Carrasquillo Carrasquillo,* 102 D.2.R 545 (1974); *Pueblo v. Serrano Nieves,* 93 D.P.R. 56 (1966).

En verdad estimamos que, según lo sostiene el imputado, al negarse a oír la prueba de defensa el Juez Instructor consideró que no era su función evaluar la credibilidad de los testigos, ni aún para el limitado propósito de determinar la implausibilidad o incredibilidad de sus testimonios. Malinterpretó por tanto su función en la vista para determinar causa probable para el arresto según la interpretación dada a la Regla 6A de Procedimiento Criminal, *supra.* No entró a considerar el testimonio de la testigo de cargo para determinar si el mismo era increíble o no cosa que entendemos era parte de su deber. Por tanto, determinó causa probable sin seguir el criterio del Tribunal Supremo expresado de manera general en *Pueblo v. Rodríguez Aponte, supra* y *Pueblo v. Rivera Rodríguez, supra.* Dicho criterio es consistente con la decisión de *Hunter* que, según el ilustrado Profesor Chiesa, representa la norma más correcta en nuestra jurisdicción.

Procede por lo tanto, revocar la resolución recurrida y devolver el caso al Tribunal de Primera Instancia para que éste ordene la celebración de una nueva vista para determinar causa probable para el arresto en la cual se permita el desfile de la prueba de defensa ofrecida y se proceda conforme con las normas aquí expresadas.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

El Juez Germán Brau Ramírez emitió una opinión disidente.

María de la C. González Cruz
Secretaria General

**ESCOLIOS 95 DTA 193**

**1.** El fundamento principal para denegar la expedición del recurso fue la sentencia emitida por el Tribunal Supremo en el caso *Pueblo v. Cruz Bayona,* 124 D.P.R. 568 (1989). Este Juez Ponente emitió un voto disidente.

**2.** 34 L.P.R.A. Ap. II.

**3.** Véase Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Vol. III, Sección 21.3(b), págs. 24-25.

**4.** Chiesa, *Ibid,* pág. 26. Véase además *Pueblo v. Rivera Rodríguez,* ___ D.P.R. ___ (1995), **95 J.T.S. 36.**

**5.** 116 D.P.R. 653, 655 (1985).

**6.** Véase también *Preliminary Hearing-Witness Credibility,* 84 A.L.R. 3d 811 (1978) .

**7.** 543 P 2d 1265 (CA 1975) .

**8.** Estamos de acuerdo con las expresiones hechas a esos efectos en *Pueblo v. Cruz Bayona, supra,* a pesar de que éstas, por tratarse del contenido de una sentencia, son meramente persuasivas y no nos obligan. Véase además *El Vocero v. E.L.A.,* ___ D.P.R. ___ (1992), **92 J.T.S 108.**

San Juan, Puerto Rico, a 26 de junio de 1995

Disentimos respetuosamente de la decisión del panel de reconsiderar nuestro dictamen denegatorio del 27 de febrero de 1995 y de revocar la resolución recurrida, ordenando la celebración de una nueva vista para determinar causa probable para el arresto del peticionario. Opinamos que el planteamiento del peticionario es prematuro, que el Tribunal de Primera Instancia no erró al determinar causa probable para el arresto, a la luz de la prueba desfilada por el Ministerio Público, y que el Tribunal actuó dentro de su discreción al excluir el testigo ofrecido por el peticionario durante la vista, toda vez que se trataba de un testimonio dirigido más bien a impugnar la credibilidad de la parte perjudicada.

## I

La moción de desestimación del peticionario fue presentada bajo la Regla 64 (p) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64 (p) . Esta Regla autoriza la presentación de una moción *"para desestimar la acusación o denuncia"* por el fundamento de que la misma se ha presentado *"sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho".*

No obstante, al momento de presentarse la moción de desestimación del peticionario ante el Tribunal Superior, no existía acusación alguna en su contra ante dicho Tribunal, porque estaba pendiente el trámite previo de vista preliminar ante el Tribunal de Distrito. La moción, de este modo, resultaba prematura■

En su moción, el peticionario solicitó la *"desestimación de las denuncias presentadas en el caso de autos"*. Entendemos, sin embargo, que la referencia a la "denuncia", dentro del contexto de la Regla 64, se refiere más bien a la primera alegación del Estado en los procesos iniciados en la Subsección de Distrito del Tribunal de Primera Instancia, conforme la Regla 34(b) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 34(b). Compárese, *Pueblo v. Carballosa Vázquez y Balzac,* \_\_\_ D.P.R. \_\_\_ (1992), **92 J.T.S. 84**, a la pág. 9,635. Las denuncias presentadas contra el peticionario no eran, como tal, *"desestimables"*, máxime cuando al determinar causa probable para arrestar al peticionario el Tribunal de Distrito descansó, no sólo en las denuncias presentadas, sino en el testimonio oral desfilado en la vista al amparo de la Regla 6(c). Cf. *Rabell Martínez v. Tribunal Superior,* 102 D.P.R. 39, 43 (1974) *("el juez para determinar causa probable no se guía por la denuncia sino por la prueba").*

A nuestro juicio, previo a la presentación de la acusación, la determinación de que existía causa probable para arrestar realizada por el Tribunal de Distrito no podía ser revisada en sus méritos por el Tribunal Superior. Compárense, *Pueblo v. Cruz Justiniano,* 116 D.P.R. 28, 30 (1984); *Pueblo v. Opio Opio,* 104 D.P.R. 165, 171 (1975); *Pueblo v. Tribunal Superior,* 95 D.P.R. 412, 413 (1967). Aunque la decisión de excluir la prueba ofrecida por la defensa durante la vista tal vez hubiera podido ser revisada por vía de certiorari, el Tribunal Superior perdió competencia sobre este tipo de recursos el 24 de enero de 1995 --una semana antes de la resolución recurrida-- por virtud de la Ley de la Judicatura de Puerto Rico de 1994. Véase, *Aderic Industrial, Inc. h/n/c La Tina Industrial Laundry v. Wilmer Tacoronte h/n/c Hotel Cupido,* KLCE95-00003 (resolución del 17 de febrero de 1995), **95 D.T.A. 15**■

Tal y como se insinuara en la resolución original de este Tribunal del 27 de febrero de 1995, el procedimiento correcto para dilucidar el planteamiento de la defensa hubiera sido que el mismo se presentara ante el Tribunal de Distrito durante la vista preliminar del caso bajo la Regla 23 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 23. Cabe hacer

hincapié en que, según caracterizada por el Tribunal Supremo de Puerto Rico, la vista preliminar goza de una naturaleza ecléctica. En su visión retrospectiva, la misma sirve como vehículo para examinar la legalidad del arresto y la validez de la detención. Véanse, *El Vocero de Puerto Rico v. E.L.A.*, ___ D.P.R. ___ (1992), **92 J.T.S. 108,** a la pág. 9843, revocado por otros fundamentos, 113 S.Ct. 2004 (1993); *Pueblo v. Rodríguez Aponte,* 116 D.P.R. 653, 666 (1985)█

Ahora bien, cuando se trata, como en este caso, de un alegado defecto procesal, es importante considerar si el mismo puede ser subsanado por los procedimientos posteriores. Cf., 34 L.P.R.A. Ap. II, R. 66. En particular, opinamos que si el defecto señalado consiste en que no se brindó al imputado la oportunidad de presentar prueba en la vista bajo la Regla 6 (c), tal defecto puede ser corregido al ofrecérsele esta oportunidad en la vista preliminar y consolidarse el examen de la validez del arresto --tal y como lo permite la visión retrospectiva de este procedimiento-- con la determinación de causa probable para acusar. Véase, Ernesto L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y los Estados Unidos,* Vol. III, Bogotá, Ed. Forum, 1993, a la pág. 65 ...*"[s]i tomamos en serio lo del modelo ecléctico, la determinación de causa probable en la vista preliminar significa que: "... [n]o hay vicio o ilegalidad en los procedimientos anteriores o cualquiera que pudo haber habido quedó subsanado con la vista preliminar");* compárense, además, *Coleman v. Burnett,* 477 F.2d 1187, 1211 (D.C. Cir. 1973) *("[t]here is nothing to be gained, ... , by sending the case back to the magistrate for a supplemental hearing after the accused has been indicted"); United States v. King,* 482 F.2d 768, 776 (D.C. Cir. 1973) *(id.).*

El planteamiento ante la consideración de este Tribunal puntualiza la necesidad de aclarar la relación entre la vista contemplada por la Regla 6 de las de Procedimiento Criminal, para la determinación de causa probable para arrestar a un imputado, y la vista preliminar requerida por la Regla 23, para determinar si existe causa probable para someter una acusación. Según ha señalado el Tribunal Supremo de Puerto Rico, existe *"un claro terreno común"* entre ambas reglas, *"en cuanto ambas regulan la determinación de causa probable, sin la cual no podrá darse curso a la denuncia". Alvarez v. Tribunal Superior,* 102 D.P.R. 236, 238 (1974).

En la etapa del arresto de un imputado, sin embargo, no existe imperativo constitucional alguno para la celebración de una vista adversativa. Al contrario, tradicionalmente se ha sostenido la suficiencia de una determinación de causa probable para arrestar a base de una declaración escrita fundada en información y creencia, tal y como lo contempla la Regla 6(a) de las de Procedimiento Criminal. Véanse, *Baker v. McCollan,* 443 U.S. 137, 143 (1979); *Gerstein v. Pugh,* 420 U.S. 103, 120-122 (1975). La expedición de órdenes de arresto fundadas en declaraciones de este tipo constituye una práctica cotidiana en nuestros tribunales, sin que ello de ordinario suscite planteamientos constitucionales. Chiesa, *supra,* a la pág. 25 *("la mayoría de las veces, la determinación de causa probable para el arresto es un procedimiento o vista ex parte, en ausencia del imputado. La presencia del imputado es la excepción, no la regla").*

El procedimiento de vista preliminar, por el contrario, constituye una fase crítica del proceso penal, donde el imputado goza del derecho constitucional a estar representado por abogado. *Coleman v. Alabama,* 399 U.S. 1 (1970). Su propósito es evitar que se someta a un ciudadano de forma arbitraria e injustificada a los rigores de un proceso criminal, sirviendo de filtro o cedazo judicial. *Pueblo v. Rodríguez Aponte,* 116 D.P.R. a la pág. 665; *Pueblo v. Figueroa Castro,* 102 D.P.R. 279, 284 (1974). La Regla 23(c) de Procedimiento Criminal específicamente autoriza al imputado *"a contrainterrogar los testigos en su contra y ofrecer . prueba a su favor".* véase, e.g., *Pueblo v. Rivera Rodríguez,* ___ D.P.R. ___ 1995), **95 J.T.S. 36.**

En su sentencia, el Panel hace hincapié en que la Regla 6(a) concede un derecho similar al

imputado a, en la vista de determinación de causa probable para arrestar, *"estar asistido de abogado, a contrainterrogar a los testigos en su contra y a ofrecer prueba en su favor".* Este lenguaje fue introducido a la Regla mediante la Ley Núm. 29 de 19 de junio de 1987, la cual también enmendó la Regla 23 y otras disposiciones de las Reglas de Procedimiento Criminal. El objetivo expreso del estatuto, en cuanto a este particular, fue el de proveer la oportunidad de omitir la celebración de la vista preliminar en muchos casos, haciendo la misma necesaria sólo cuando el magistrado llamado a realizar la determinación de causa probable para el arresto bajo la Regla 6 no hubiese examinado algún testigo con conocimiento personal de los hechos o cuando el imputado no hubiere estado presente en la determinación de causa probable. Exposición de Motivos, Leyes de Puerto Rico, a la pág. 98 (1987).

Se pretendió, en otras palabras, sustituir la vista preliminar, en estas situaciones, por la vista bajo la Regla 6, asignando a esta última el rol de *"cedazo judicial"* para determinar si el imputado debía ser sometido a los rigores de un juicio plenario. Esto, naturalmente, hizo necesario que se brindaran al imputado en esta primera etapa las mismas garantías requeridas para la vista preliminar.

Este esquema, sin embargo, fue abandonado por la Asamblea Legislativa tres años después, mediante la Ley Núm. 26 de 8 de diciembre de 1990, al concluirse que sus resultados *""no ha[bían] sido los esperados."* Exposición de Motivos, Leyes de Puerto Rico, a la pág. 1503 (1990); véase, además, Chiesa, *supra,* a la pág. 26 n. 24. Se enmendó nuevamente la Regla 23 para revertirla *"a su estado antes de la enmienda de 1987 con el propósito claro de garantizarle al imputado de delito grave la celebración de una vista preliminar antes de la celebración de juicio en su fondo." Id.* No obstante, aunque el propósito expreso de la Ley Núm. 26 fue el de asignar nuevamente el rol de *"cedazo judicial"* a la vista preliminar, dicha Ley no eliminó la enmienda anterior a la Regla 6 ampliando los derechos de los imputados.

El resultado de este proceso fue de crear una incertidumbre en nuestra jurisdicción en torno al alcance y efecto de la vista sobre causa probable para arrestar al amparo de la Regla 6 cuando el imputado comparece representado por un abogado y ejerce sus derechos a contrainterrogar la prueba presentada por el Ministerio Público y a presentar prueba. Chiesa, *supra,* a las págs. 26-27 *("[e]liminado tal esquema ..., debió eliminarse también el tercer párrafo de la Regla 6(a), que concede al imputado el derecho a estar asistido por abogado, contrainterrogar testigos y presentar prueba en su favor");* véase, también, Olga E. Resumil de Sanfilippo, *Derecho Procesal Penal,* T. I, Equity Publishing Co., Sup. 1992, a las págs. 22 y 23.

La solución adoptada por el Panel, en este sentido, consiste en dar una lectura literal a las disposiciones de la Regla 6 equiparando la misma a una vista preliminar en estas situaciones. Es significativo de este enfoque que, en su discusión de los méritos de este caso, el Panel descansa en la jurisprudencia del Tribunal Supremo de Puerto Rico interpretativa de la Regla 23, así como en jurisprudencia de otras jurisdicciones relacionada a procedimientos análogos a la vista preliminar, más bien que en autoridades asociadas a la determinación de causa para arrestar, que es lo que realmente está envuelto en este caso.

Diferimos de la sabiduría de esta postura. La misma, a nuestro juicio, no sólo ignora el claro mandato legislativo de la Ley Núm. 26 de 8 de diciembre de 1990, sino que tiene la consecuencia de introducir una innecesaria duplicidad en los procedimientos, creando, en efecto, dos vistas preliminares.██ Cabe señalar que si el Tribunal de Primera Instancia finalmente rechaza los argumentos de la parte peticionaria en la etapa de causa probable para arrestar, dicha parte contará con la opción de presentar idénticos argumentos ante dicho foro en la vista preliminar, los cuales podrán ser seguidos por una nueva moción para desestimar bajo la Regla 64(p). La interpretación del Panel, de este modo, le brinda a la defensa una

mordida extra de una misma manzana, sin que este beneficio esté acompañado de alguna ganancia para la administración de la justicia, desde el punto de vista de la economía procesal.

Los tribunales *"[t]enemos el deber de hacer que el Derecho sirva propósitos útiles sociales, no esquemas teóricos abstractos que arrojan resultados prácticos absurdos"*. *Passalacqua v. Municipio de San Juan,* 116 D.P.R. 618, 632 (1985). En la medida en que el alcance de las enmiendas introducidas por las leyes Núms. 29 de 19 de junio de 1987 y 26 de 8 de diciembre de 1990 pudiera resultar ambiguo, opinamos que la forma correcta de interpretar dichos estatutos consiste más bien en atender y dar vigencia al propósito perseguido por el Legislador. R. Elfrén Bernier y José A. Cuevas Segarra, *Aprobación e Interpretación de Leyes en Puerto Rico,* **Publicaciones JTS,** 1987, a la pág. 267; véase, además, *Mason v. White Star Bus Line,* 53 D.P.R. 337, 340 (1938) *("es regla de oro en materia de interpretación de leyes que el objeto primordial de todas las reglas de hermenéutica no es conseguir un objetivo arbitrario preconcebido, sino dar efecto al propósito del legislador")*.

La intención legislativa de la Ley Núm. 29 de 19 de junio de 1987, al conferir a un imputado el derecho a tener representación legal, a contrainterrogar la prueba del Ministerio Público y a presentar prueba en su favor en los procedimientos bajo la Regla 6 no fue la de crear dos vistas preliminares, sino de permitir que, en algunos casos, la vista preliminar pudiese ser sustituida por la vista bajo la Regla 6. Al adoptarse, por otro lado, la Ley Núm. 26 de 8 de diciembre de 1990, la Asamblea Legislativa expresamente decidió restituir el estado de derecho anterior a 1987 y asignar, de forma exclusiva, a la vista preliminar de la Regla 23 la función de determinar cuándo existe causa para someter a un ciudadano a los rigores y contingencias de un juicio plenario.

A nuestro juicio, dicha intención debe ser decisiva. En la medida en que los derechos concedidos al imputado bajo la Regla 6 pudieran incidir también sobre la determinación de causa probable para acusar, no se debe desplazar el centro de gravedad de la misma a la etapa precoz del arresto, sino que, como hemos sugerido, se deben posponer los planteamientos suscitados en esta primera etapa y consolidarlos a la determinación de causa probable de la vista preliminar.

## II

En sus méritos, aún atribuyendo a la vista bajo la Regla 6 celebrada en este caso una función y características análogas a las de una vista preliminar, tal y como lo hace el Panel, opinamos que la determinación recurrida fue correcta.

El Tribunal Supremo de Puerto Rico ha resuelto que, cuando se impugna una determinación de causa probable a través de la Regla 64(p), el juez que adjudica esta moción no está autorizado a sustituir el criterio del juez que presidió la vista. La determinación del Juez instructor goza de una presunción de corrección. *Pueblo v. Rivera Alicea,* ___ D.P.R. ___ (1989), **89 J.T.S. 108,** a la pág. 7281; *Rabell v. Tribunal Superior,* 101 D.P.R. 796, 799 (1973).

Sólo procede declarar con lugar una moción de este tipo cuando existe *"carencia absoluta de prueba tendiente a demostrar que existe tal causa probable para creer que se ha cometido un delito y que el acusado lo cometió"*. *Vázquez Rosado v. Tribunal Superior,* 100 D.P.R. 592, 594 (1972); véanse, además, *Pueblo v. Rodríguez Ríos,* ___ D.P.R. ___ (1994), **94 J.T.S. 106,** a la pág. 46; *Pueblo v. Rivera Alicea,* **89 J.T.S. 108** a las págs. 7281-82; *Pueblo v. González Pagán,* 120 D.P.R. 684, 687-88 (1988); *Pueblo v. Tribunal Superior,* 104 D.P.R. 454, 459 (1975).

En el presente caso, utilizando este estándar, no podemos concluir que el Tribunal de Primera Instancia errara al denegar la moción de desestimación de la parte peticionaria. Según señalado anteriormente, la testigo Jeanette López Cruz declaró bajo juramento en la vista bajo la Regla 6 e imputó al peticionario haberla inducido a entregarle sus hijos a terceros, engañándola luego, al decirle que los niños habían muerto. Claramente, a la luz de esta declaración, no existiría *"carencia absoluta de prueba"* para el arresto del peticionario por los delitos imputados.

El Panel, sin embargo, aplica un parámetro distinto de revisión a la resolución recurrida. De acuerdo a su análisis, el Tribunal de Primera Instancia venía obligado a considerar la credibilidad del testimonio de la señora López Cruz. El Panel encuentra que dicho testimonio resulta *"de su faz poco creíble", ante,* a la pág. 9, lo que, unido a la decisión del Tribunal de Distrito de no recibir el testimonio del Sr. Gutiérrez Báez justifica, a juicio del Panel, la revocación del dictamen recurrido.

No estamos de acuerdo que de ordinario sea una función propia del Tribunal el pasar juicio sobre la credibilidad de los testigos presentados por el Ministerio Público en apoyo a una determinación de causa probable bajo las Reglas 6 ó 23 de las de Procedimiento Criminal.█ Menos aún, que corresponda a este Tribunal --o al Tribunal de Primera Instancia, al adjudicar una moción de desestimación bajo la Regla 64(p)-- sustituir el criterio del Magistrado instructor en la vista para la determinación sobre causa probable.

El Tribunal Supremo de Puerto Rico ha advertido que la vista preliminar no debe convertirse en un mini-juicio y que la función de adjudicar la culpabilidad del acusado está reservada para el juicio plenario. *Pueblo v. Rodríguez Aponte,* 116 D.P.R. a la pág. 665; *Hernández Ortega v. Tribunal Superior,* 102 D.P.R. a la pág. 768. No debe perderse de vista que el Ministerio Público no tiene la obligación de presentar toda su prueba durante dicha vista. *Pueblo v. Rivera Alicea,* **89 J.T.S. 108** a la pág. 7283; *Pueblo v. Figueroa Castro,* 102 D.P.R. 279, 284 (1974).

Diferimos de la evaluación del testimonio de la perjudicada que lleva a cabo el Panel. A nuestro juicio, la declaración bajo juramento de la Sra. López Cruz es suficiente para establecer la scintilla de prueba necesaria para el arresto del peticionario. *Del Toro Lugo v. Estado Libre Asociado,* ___ D.P.R. ___ (1994), **94 J.T.S. 119,** a la pág. 161; Resumil, *supra,* a la pág. 85 (Sup. 1992). Dicha declaración no es inherentemente implausible. Ciertamente, no es menos tangible que las declaraciones juradas que cotidianamente prestan los agentes del orden público --a menudo, utilizando fórmulas estereotipadas-- y que son aceptadas en la etapa de arresto, bajo el mismo estándar constitucional que en el caso de autos, para poner en marcha la maquinaria del sistema judicial en contra de algún ciudadano. No encontramos fundamento para brindar un tratamiento distinto a la declaración de esta testigo.

En última instancia, nuestra insatisfacción con la postura del Panel responde a lo que percibimos como un posible juicio moral de la alegada perjudicada, que nos resulta difícil de suscribir. En efecto, en su evaluación del testimonio de la Sra. López Cruz, el Panel adopta un tono de franco escepticismo, que en ocasiones da la impresión de constituir un juicio en los méritos sobre esta prueba.

En la etapa preliminar del procedimiento, sin embargo, el *quántum* de prueba requerido sólo exige que se establezca la existencia de prueba sobre la probabilidad de que se haya cometido el delito y que hubiera sido el imputado el que lo cometió. *Pueblo v. Rodríguez Aponte,* 116 D.P.R. a la pág. 663; *Pueblo v. López Camacho,* 98 D.P.R. 700, 702 (1970).

Comprendemos la preocupación del Panel en torno al contenido del testimonio de la Sra. López Cruz. Pero no es la función del Tribunal, en esta etapa, adjudicar finalmente la

credibilidad de dicho testigo. Nuestra función se limita más bien a determinar si dicho testimonio, de ser creído, establece la probabilidad que se haya cometido el delito imputado y la conexión del peticionario con el mismo. Si la Sra. López Cruz efectivamente está mintiendo --asunto sobre el cual no emitimos opinión alguna-- ello es un asunto que debería dilucidarse en la etapa del juicio, que es la fase del procedimiento diseñada para esta determinación. No vemos base alguna, sin embargo, en esta etapa temprana, para desestimar el proceso por este fundamento.

El Panel invoca la norma expuesta por el Tribunal Supremo de Colorado en el caso de *Hunter v. District Ct. In & For Twentieth Jud. Dist.*, 543 P.2d 1265 (Co. 1975) (*en banc*), con respecto a las circunstancias en que la credibilidad de los testigos debe ser tomada en consideración en los procedimientos de dicho estado análogos a nuestra vista preliminar. No necesariamente estamos en desacuerdo con este estándar. No obstante, resulta instructivo considerar cómo el propio Tribunal Supremo de Colorado aplicó la doctrina enunciada a los hechos de dicho caso.

En *Hunter*, se trataba de un procedimiento criminal por secuestro y violación. Durante la vista preliminar celebrada ante el tribunal de primera instancia de Colorado, la parte perjudicada testificó que nunca antes había sostenido relaciones con el imputado; que esa noche había asistido a una fiesta acompañada por él; que el imputado la había insultado y agredido durante la fiesta; que un amigo la había llevado a su casa; que no se percató que el imputado la estaba siguiendo; que cuando su amigo la dejó en su casa, el imputado la raptó; que el perjudicado la llevó a un campo abierto donde sostuvieron relaciones sexuales dos veces en contra de su voluntad y que ella posteriormente escapó e informó a la Policía. *Id.*, a la pág. 1266.

Durante la vista, el imputado presentó el testimonio del amigo que había llevado a la perjudicada a su casa. Este relató que el imputado y la perjudicada habían llegado juntos a la fiesta; que durante la misma, el imputado había comentado ante terceros que la perjudicada y él lo *"habían hecho"* en el campo; que la perjudicada se había afectado y le había dicho al imputado que eso había sido *"entre ellos"*, insultándolo; que el imputado había intentado sujetar a la perjudicada contra el piso; que ésta había amenazado con llamar a la Policía; que la perjudicada le había pedido entonces al declarante que la llevara a su casa; que, durante el camino, ella notó que el imputado los estaba siguiendo; y que el declarante la dejó frente a su casa, diciéndole que debía entrar rápido para evitar problemas con el imputado. 543 P.2d., a la pág. 1267.

A base de esta prueba, el Tribunal de instancia desestimó la acusación, indicando que el testimonio de la perjudicada había sido contradictorio en varios aspectos fundamentales y que ésta no era capaz de distinguir entre la realidad y la ficción. *Id.* Al anunciar la norma citada por el Panel, el Tribunal Supremo de Colorado revocó esta determinación y resolvió que los conflictos en el testimonio de la perjudicada no eran, como cuestión de derecho, implausibles o increíbles. 543 P.2d., a la pág. 1268.

Similarmente, en el caso de autos, opinamos que las inconsistencias y dificultades en el testimonio de la Sra. López Cruz, reseñados en la ponencia del Panel, no son de tal índole que justificarían concluir la inexistencia de causa probable para arrestar al peticionario.

### III

Consideramos, finalmente, que la determinación del Tribunal de Distrito de no escuchar el testimonio del Sr. Gutiérrez Báez tampoco proveía una base para la revocación de la resolución recurrida. Aunque es cierto que la Regla 6(a) concedía un *"derecho"* al peticionario de *"ofrecer prueba a su favor"*, el alcance de dicho derecho debe ser interpretado según el propósito de la institución procesal en cuestión. Resumil, *supra*, a la pág. 23.

En efecto, toda vez que el propósito de la vista es la determinación de causa probable para arrestar y que dicha determinación no debe ser perturbada a menos que exista ausencia total de prueba en cuanto a la probabilidad de que se haya cometido el delito o sobre la conexión del acusado con el delito imputado, *Pueblo v. Rivera Alicea,* **89 J.T.S. 108** a las págs. 7281-82, la función de la vista queda cumplida una vez el juez instructor ha podido arribar a una decisión sobre este particular, lo que puede hacerse a base de la prueba presentada por el Ministerio Público.

Según observara la ilustrada Sala recurrida en su resolución, el Tribunal Supremo de Puerto Rico expresamente ha convalidado este curso de acción, dentro del contexto de la Regla 23, indicando que: *"[u]na vez el juez instructor se ha convencido de la existencia de causa probable puede, dentro de la facultad para reglamentar la prueba de defensa, decidir no seguir escuchando prueba, o sea, no escuchar la prueba de la defensa". El Vocero de Puerto Rico v. Estado Libre Asociado,* **92 J.T.S. 108** a la pág. 9843; *Pueblo v. Cruz Bayona,* 124 D.P.R. 568 (1989); *Pueblo v. Rodríguez Aponte,* 116 D.P.R. a la pág. 668.

La determinación, a nuestro juicio, es una que queda a la sana discreción del Juez Instructor. Si, como en el presente caso, el propósito de la evidencia a ser ofrecida por el imputado es contradecir la versión de los hechos de los testigos del Ministerio Público e impugnar la credibilidad de éstos, el tribunal puede optar por no recibir esta prueba y dejar que el conflicto sea dilucidado en la etapa del juicio.

Aun si determináramos que la decisión del Tribunal de no recibir el testimonio del Sr. Gutiérrez Báez fue errónea, entendemos que dicho error, de por sí, no conlleva la revocación de la resolución recurrida, toda vez que la prueba desfilada resulta suficiente para sostener el dictamen recurrido. El estándar novel de revisión utilizado por el Panel, de considerar el posible efecto del testimonio ofrecido, evaluándolo de la forma más favorable para el peticionario, puntualiza que, en efecto, según la postura del Panel, la vista de causa probable requiere que se sopesen los testimonios de ambas partes y se adjudiquen los conflictos de credibilidad. Su apreciación de que el testimonio de la Sra. López Cruz resulta *"increíble",* desde esta perspectiva, constituye una adjudicación prematura de los méritos de la causa, tomada en ausencia de un récord completo y sustituyendo el criterio del Juez Instructor, quien estaba en una posición superior a la de este Tribunal, para evaluar la prueba.

Respetuosamente disentimos.

GERMAN J. BRAU RAMIREZ
JUEZ DE APELACIONES

### ESCOLIOS VOTO DISIDENTE DEL JUEZ DE APELACIONES SR. BRAU RAMIREZ — 95 DTA 193

**1.** Las Reglas 63 y 65 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, Rs. 63 y 65, establecen que las defensas, objeciones y/o planteamientos relacionados a la acusación, de ordinario deben presentarse con posterioridad a ésta. La moción de la parte peticionaria fue presentada en el Tribunal Superior, con el número correspondiente al procedimiento de vista preliminar.

**2.** Es interesante señalar que el remedio concedido por el Panel consiste en revocar la resolución recurrida y devolver el caso al Tribunal de Primera Instancia *"para que éste ordene la celebración de una nueva vista para determinar causa probable en la que se permita el desfile de la prueba de defensa ofrecida y se proceda conforme con las normas aquí expresadas."* Este remedio resulta difícil de compaginar con el vehículo procesal escogido por la parte peticionaria para presentar su planteamiento en primer lugar --la Regla 64(p) de las de Procedimiento Criminal.

Toda vez que no se recurre, como tal, de la determinación del Tribunal de Distrito de excluir la prueba de defensa ofrecida en la vista de causa probable para arrestar y sí de la denegatoria del Tribunal Superior de la moción de desestimación presentada por la parte peticionaria, pensaríamos que al concederse el recurso lo que procedería sería la desestimación de la acusación (que todavía no se ha presentado), que es el remedio que contempla la Regla 64.

**3.** En otros contextos, el Tribunal Supremo de Puerto Rico ha autorizado la consideración de defensas en la etapa de vista preliminar, cf., *Hernández Ortega v. Tribunal Superior*, 102 D.P.R. 765 (1974).

**4.** Lo que ayuda a entender la curiosa situación procesal señalada anteriormente, de que la parte peticionaria ha presentado una moción de desestimación bajo la Regla 64(p) cuando todavía no existe una acusación en el caso.

**5.** Particularmente, en el caso de la primera, no debe perderse de vista que la determinación de causa probable para el arresto a menudo se produce sobre la base de una declaración jurada.